UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



In re APPLICATION OF NOKIA
CORPORATION FOR AN ORDER
OF DISCOVERY PURSUANT TO
28 U.S.C. § 1782

Case No. 1:07-mc-47

Honorable Gordon J. Quist

_____/

**BRIEF IN SUPPORT OF ROBERT BOSCH GmbH'S MOTION TO QUASH SUBPOENA**

**FILED UNDER SEAL**

### Introduction

This is an action under 28 U.S.C. § 1782 that seeks to preempt a Mannheim, Germany District Court's pending decision whether to compel production of certain documents for use in German proceedings. It arises out of an *ex parte* attempt by Nokia Corporation ("Nokia") to foist a discovery subpoena on Robert Bosch GmbH ("GmbH"), even though (1) GmbH lacks contacts with the Western District of Michigan sufficient to establish personal jurisdiction; (2) the confidential documents sought are not even located in the United States (much less the Western District) and are likely inadmissible in the German action; and (3) Nokia's gambit, if successful, would circumvent proof-gathering restrictions and discovery policies in the German forum where Nokia chose to seek relief and agreed to the exclusive jurisdiction of that Court to resolve all disputes. GmbH respectfully requests that this Court quash the subpoena.

### Operative Facts

*Robert Bosch GmbH*

The current version of the Nokia subpoena is directed to GmbH, a corporation authorized and organized under the laws of Germany, and which is headquartered and has its principal place of business in Stuttgart, Germany (Carrie Decl. ¶ 4, attached as Exhibit A.) GmbH:

- is not publicly traded, is not incorporated in Michigan, and is not registered, authorized or qualified to do business in Michigan (*id.* ¶ 5);

- does not have a registered agent in Michigan, is not engaged in any continuous or systematic activity of any kind in Michigan, does not maintain any offices or sales agents in Michigan, and does not manufacture or assemble product in Michigan (*id.* ¶¶ 6- 9);

- does not perform any record keeping functions in Michigan, does not own, lease or rent property in Michigan, does not maintain a telephone, telex or telefax number in Michigan, and does not have any bank accounts in Michigan (*id.* ¶¶ 10-14); and

- does not maintain in Michigan—nor anywhere else in the United States—any license agreements pertaining to its "telephony patent portfolio," the subpoena's subject matter (*id.* ¶ 15).

Although GmbH does control directly or indirectly a shareholding interest in a number of U.S. subsidiaries, each is separate from and legally independent of GmbH, and observes all corporate formalities. (Carrie Decl. ¶ 16.) Indeed, GmbH has adopted and observes the principle that transactions between each subsidiary and GmbH are to be conducted at an "arms length" basis, with such transactions recorded by appropriate entries in their respective books and records in accordance with general accepted accounting principles. (*Id.* ¶ 18(d).)

*Robert Bosch Fuel Systems LLC*

Nokia served its subpoena on Robert Bosch Fuel Systems LLC, formerly known as Robert Bosch Fuel Systems Corporation ("RBFS").[1] RBFS is a Delaware Limited Liability Company with its principal place of business at 4700 Broadmoor, SE, Kentwood, Michigan. (Hagene Aff. ¶ 7, attached as Exhibit B; Adler Aff. ¶ 3, attached as Exhibit C.) RBFS's sole member is Robert Bosch LLC, a Delaware Limited Liability Company formerly known as Robert Bosch Corporation ("Bosch LLC"). (Hagene Aff. ¶ 4; Adler Aff. ¶¶ 1, 4.) Bosch LLC's sole member is Robert Bosch North America Corporation, a Delaware Corporation ("RBNA").

---

[1] To this day, Nokia has never served GmbH with the document subpoena to which GmbH is supposed to respond. GmbH is aware of the subpoena solely because RBFS forwarded a copy of it. GmbH files its motion to quash while reserving the right to contest Nokia's defective service and the Court's lack of jurisdiction.

2

(Adler Aff. ¶ 5). GmbH is not a member of, nor does it own any interest in, either RBFS or Bosch LLC, the sole member of RBFS. (Hagene Aff. ¶ 4; Adler Aff. ¶¶ 6, 7.) RBFS is in the business of designing and manufacturing fuel system components. RBFS has never been involved in any business related to mobile telephones, and RBFS possesses no documents related to such business. (Hagene Aff. ¶ 5)

*The Subpoena*

RBFS received a subpoena issued by the United States District Court for the Western District of Michigan in this matter on May 8, 2007. (Hagene Aff. ¶ 3). That subpoena, attached as Exhibit D, is addressed to "Robert Bosch GmbH, 4700 Broadmoor, SE, Kentwood, Michigan." The subpoena seeks production of "licenses it [Robert Bosch GmbH] has relating to its [Robert Bosch GmbH] mobile telephone directory." (Ex D; Hagene Aff. ¶ 5.)

RBFS has no documents in its possession, custody, or control related to the mobile phone business, including any patents, patent portfolios, or licenses GmbH may have issued to any company. (Hagene Aff. ¶ 6). Further, RBFS has no right to obtain such documents (*id.*), which are not even located in the United States (Carrie Decl. ¶ 15).

*The German Litigation*

Nokia sued GmbH in the district court in Mannheim, Germany, seeking a license in GmbH's Mobile Telephony Patent Portfolio ("GmbH Patent Portfolio") under "fair reasonable and non-discriminating" ("FRAND") terms. (Sedl Decl. ¶¶ 3-4, attached as Exhibit E.) In GmbH's rejoinder (counter-complaint) of March 9, 2007, GmbH granted a license to Nokia under the GmbH patent portfolio on FRAND terms, which are still to be determined by GmbH. (*Id.* ¶ 5.) While the Mannheim court has not yet indicated whether it will keep the two cases combined, the focus will be the parties' competing views of the FRAND terms. (*Id.* ¶ 6.)

3

Nokia has already requested that the Mannheim Court order GmbH to produce to Nokia the Samsung-GmbH license agreement for use of the GmbH Patent Portfolio. (Sedl Decl. ¶ 7). Nokia apparently hopes to argue to the German Court that the license fees on which GmbH and Samsung confidentially agreed as part of a larger agreement also establish Nokia's FRAND fee.

In German civil practice, there is no general duty to participate in discovery. (Sedl Decl. ¶ 10.) But there is an exception, in Section 142 of the German Code of Civil Procedure, that permits a court to order disclosure from a party or third party. (Sedl Decl. ¶ 11.) Nokia was thus entitled to ask the Mannheim Court to order GmbH to produce the confidential Samsung license, and Nokia has made that request. (Sedl Decl. ¶ 12.) Indeed, the German Supreme Court has clarified a German court's authority to require document production in litigation involving technical property rights, as here, if, in the German Court's opinion, "the production is expedient and necessary to clarify the facts of the case, and if such is reasonable and appropriate." (Sedl Dec. ¶ 13, quoting *Bundergerichtshof*, Case No. X ZR 114/03 (Aug. 1, 2006).) The German Court considers whether "it can be reasonably expected of the party required to produce, taking into account his legally protected interests and after considering the conflicting interests."[2] (*Id.*)

The "early first hearing" in the litigation before the Mannheim District Court is set for July 3, 2007. At that "early first hearing," the Court will consider Nokia's request for the confidential Samsung-GmbH license, and the Court will decide whether to order its production under the rules the German Supreme Court established. At that time, the Mannheim Court may order such production and determine its relevance for use in the litigation. (Sedl Decl. ¶¶ 16, 17.)

---

[2] A German court order to produce is not in conflict with the fact that Nokia's claims are based on license contract obligations. Article 28, paragraph 2 of the Agreement on Trade Related Aspects of Intellectual Property Rights provides that the same principles are to be applied by a German court in this situations as a German court would apply in a property right infringement dispute. (Sedl Decl. ¶ 19.)

4

Importantly, the overall litigation will not be resolved at the July 3, 2007 "early first hearing." Rather, a series of later hearings may be ordered, with a final decision to come even later. (Sedl Decl. ¶ 15.) As such, the determination of whether GmbH must produce the confidential Samsung-GmbH license is before the district court in Mannheim, and that court will make its decision based on controlling German law. (Sedl Decl. ¶ 18). If the Mannheim District Court orders production, Nokia will have ample time to reference the license in later hearings before the court, and before the court's final decision. (Sedl Decl. ¶ 18.)

*Proceedings in this Court*

On April 23, 2007, following Nokia's "Ex Parte Application for an Order of Discovery Pursuant to 28 USC § 1782," this Court issued an *ex parte* Order, attached as Exhibit F, granting Nokia's application and ordering GmbH to "provide to Nokia copies of the licenses that it has issued relating to its mobile telephony directory." On April 25, 2007, a subpoena was issued by the Court, through Nokia's counsel to "Robert Bosch Corporation [not GmbH) c/o CSS Lawyers Incorporating Service, 601 Abbott Road, East Lansing, Michigan 48823." Exhibit G. When advised the subpoena was inappropriate, Nokia's counsel issued a new subpoena to "Robert Bosch GmbH, 4700 Broadmoor, SE, Kentwood, Michigan 49512. (Ex. D.) RBFS received the subpoena on May 8, 2007. (Hagene Aff. ¶ 3.) It has a production date of May 21, 2007.

Unlike this Court's Order, which directed that GmbH "provide to Nokia copies of the licenses it has issued relating to its mobile telephony directory" (Order, Ex. F) the subpoena Nokia issued sought much broader production, including "all documents relating to any licenses, contracts, or agreements between GmbH and any other person or entity relating to the licensing or use of Bosch's mobile telephony patent portfolio." Nokia's subpoena further defined, at length, the "documents" it was requesting, to include:

every original and every copy of my original that differs in any way from any original and of every writing or recording of any kind or description, whether handwritten, typed, drawn, sketched, printed, recorded, or fixed in any other medium by any physical, mechanical, electronic or electrical means, including, without limitation: books, records, papers, invoices, accounts, statements, checks, drafts, written materials of oral communications, photographs, computer printouts, diagrams, prints, schematics, reports, communications, correspondence, memoranda, notes of conversations and minutes of meetings, telexes, telegrams, emails, diaries, appointment calendar or appointment books, agreements and contracts. Different versions of the same document with and without handwritten notation found in the original shall be considered different documents.

Nokia's request goes far beyond the scope of what it represented to the Court in its application that it was seeking, and far beyond the scope of the Court's Order, which merely provided for production of "copies of the licenses." Nokia's request also omits various provisions, recited in its Application, that Nokia said would protect confidentiality.

## Discussion

### I. GmbH is not subject to the Jurisdiction of this Court, and hence a Subpoena Cannot Issue Against It

#### A. GmbH neither resides nor is found in the Western District of Michigan.

This Court may order GmbH to produce the documents under Section 1782 only if GmbH "resides or is found" in the district of the United States Court for the Western District of Michigan. 28 U.S.C. § 1782(a). Since GmbH neither "resides" in the Western District, nor is it "found" in the Western District, this Court should quash the document subpoena.

Whether a corporation is "found" or "resides" in a district can be ascertained by looking to whether the corporation is subject to personal jurisdiction there. *Battle Creek Equipment Co. v. Roberts Mfg. Co.*, 460 F. Supp. 18, 21-22 (W.D. Mich. 1978); 28 U.S.C. § 1391(c). Under the Due Process Clause, GmbH must have significant minimum contacts with the Western District in order for this Court to assert jurisdiction over it so as to "not offend traditional notions of fair play

and substantial justice." *See, Inc. v Imago Eyewear Pty, Ltd.*, No. 04-2388, 2006 WL 348148, at *3 (6th Cir. Feb. 14, 2006). Accordingly, three elements must be met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.; see also S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

As noted above, GmbH is a German Corporation that has no contacts with Michigan. (Carrie Decl. ¶¶ 4-14.) Nor does GmbH maintain any of its Telephony Patent Portfolio license agreements in Michigan or, for that matter, anywhere in the United States. (Carrie Decl. ¶ 15.) While GmbH does have a shareholder interest in RBNA (which in turn is sole member of Bosch LLC, which is the sole member of RBFS, the entity that actually resides in the Western District), each Robert Bosch U.S. subsidiary is separate from and legally independent of GmbH, observes all corporate formalities, and conducts transactions with GmbH at "arms length." (Carrie Decl. ¶ 16.) Because GmbH neither "resides" nor is "found" in the Western District, there is no basis to issue a subpoena under Section 1782's plain language.

**B.  Nokia's only basis for this Court's jurisdiction over GmbH are allegations in unrelated litigation. But those pleadings were previously corrected and amended to reflect that GmbH has no contacts with Michigan.**

Nokia claims that GmbH "resides" and is "found" in this district solely because, in a prior suit, GmbH stated that it had a place of business at 4700 44th Street, Kentwood, Michigan. (Nokia App. at 9.) That statement was (and remains) inaccurate; GmbH does not have any operations in Michigan. Rather, it is RBFS, a separate and distinct legal entity from GmbH, that conducts operations in Kentwood. (Hagene Aff. ¶¶ 4-6; Adler Aff. ¶¶ 3, 4.) RBFS is a wholly owned subsidiary of Bosch LLC. (Hagene Aff. ¶¶ 4-6; Adler Aff. ¶¶ 3, 4.)

Because the allegations in the prior suit did not accurately reflect where GmbH does business, GmbH filed an amended version of its First Amended Complaint. Exhibit H.[3] The First Amended Complaint correctly stated that GmbH has its principal place of business in Stuttgart, Germany, and that RBFS has a place of business in Kentwood, Michigan.[4] (*Id.* ¶ 1.)

An amended complaint supersedes a prior complaint. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Once a pleading is amended, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes *functus officio*." *Trowbridge v. County of Eaton*, 2006 WL 1997390, *2 (W.D. Mich. July 14, 2006), quoting *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955). Accordingly, the allegations in the prior complaint that Nokia cites as the sole basis for jurisdiction over GmbH have been superseded and withdrawn, leaving Nokia without any factual or legal basis to contend that GmbH resides or is found in this district.

### C. Jurisdiction over a subsidiary does not establish jurisdiction over a parent.

Jurisdiction over a subsidiary does not confer jurisdiction over the entity's parent, even if the subsidiary is wholly owned by the parent. In *Cannon Manufacturing Co v. Cudahy Packing Company*, 263 U.S. 333 (1925), for example, a North Carolina company, sued Cudahy Packing Company, a Maine corporation, in North Carolina. The defendant did not itself have any presence in the State of North Carolina, but it was the corporate parent of a wholly owned subsidiary that had an office in North Carolina for marketing and selling the parent's product in that state. *Id.* at 334-335. With respect to the relationship between the parent and subsidiary corporations, the Court noted that:

---

[3] The original complained filed in this district was transferred to the United States District Court for the Northern District of Ohio.

> Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other States. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed.

*Id.* at 335. The Court concluded that the corporate form could not be ignored, noting that "the corporate separation, though perhaps merely formal, was real. It was not pure fiction." *Id.* at 337. Accordingly, the Court affirmed dismissal due to lack of jurisdiction over the parent. *Id.*

The Sixth Circuit has held that "the principle enunciated [in *Cannon*] should be applied in any case where federal court jurisdiction depends on the relationship between a corporate parent and its corporate subsidiary." *Schwartz v Electronic Data Systems, Inc.*, 913 F.2d 279 (6th Cir. 1990); *accord, e.g., General Acquisition, Inc. v GenCorp Inc.*, 766 F. Supp. 1460, 1486-87 (S.D. Ohio 1990). And courts have not hesitated to apply the *Cannon* principle to the international parent of a U.S. subsidiary, as is the case here. *See, e.g., Hargrave v Fiberboard Corporation*, 710 F.2d 1154, 1159-60 (5th Cir. 1983) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Cannon* "stands for the proposition that so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in the forum state may not be attributed to the other," even where the parent owns 100% of the subsidiary and has "complete authority" over the subsidiary's policy decisions).

---

[4] The motion to amend was granted on May 17, 2007, which operates as the effective filing date of the First Amended Complaint. As stated, the amendment was sought to "clarify jurisdictional allegations" and accurately reflect where GmbH does business. (Ex. I.) The amendment was not done in response to Nokia's subpoena.

Here, RBFS is a separate and distinct entity from GmbH, and the Court's jurisdiction over RBFS does not establish jurisdiction over GmbH. Accordingly, there is no basis on which to issue a subpoena to GmbH under Section 1782, and the subpoena Nokia obtained *ex parte* should be quashed.

**D.     Nokia's issuance of a subpoena to GmbH's Michigan affiliate was ineffective.**

Nokia cannot circumvent the Court's lack of jurisdiction over GmbH by attempting to serve a GmbH subpoena on one of GmbH's affiliates in Michigan, as any subpoena directed to an affiliate could not compel production of documents in the possession, custody, or control of GmbH in Germany. It is axiomatic that "a witness may not be compelled to produce material that the witness neither controls nor possesses." C. Wright & A. Miller 8A *Federal Practice and Procedure*, § 2456. Accordingly, if a party subject to a subpoena lacks control over documents in the possession of another corporation, the subpoenaed party has no duty to produce the documents, even where the subpoenaed party is a subsidiary of the entity that actually possesses the documents. *Gerling International Insurance Co. v. Commissioner of Internal Revenue,* 839 F.2d 131, 139-40 (3d Cir. 1988); *see also Norex Petroleum, Ltd. v. Chubb Ins. Co. of Canada,* 384 F. Supp.2d 45, 55 (D.D.C. 2005) (denying request for order requiring American subsidiary to produce documents held abroad by its foreign parent company, both because the request went "beyond the realm of discovery contemplated by § 1782" and because the requesting party failed to demonstrate that the subsidiary had possession, custody, or control of the documents).

As noted above, RBFS does not have the documents Nokia requested (which are in Germany), nor does RBFS have the ability to obtain the documents. (Hagene Aff. ¶ 6.) Nokia therefore cannot use RBFS's presence in the Western District to circumvent Section 1782's strict jurisdictional requirements.

10

### E.  Nokia has already agreed that the Mannheim District Court has exclusive jurisdiction over all aspects of this dispute.

Nokia has already agreed that the Mannheim court has the exclusive jurisdiction to hear and decide all disputes related to GmbH's grant of a license to Nokia, including document production disputes. Nokia's December 2006 brief to the Mannheim court contended that the so-called "pre-agreement" between GmbH and Nokia would be binding between the parties. Section 14 of that pre-agreement provided that all disputes relating to the agreement were to be resolved exclusively by arbitration in Stockholm. But when Nokia filed its complaint in Mannheim, and GmbH granted Nokia a license under the Patent Portfolio (Sedl Decl. ¶ 5), GmbH granted that license with the specific stipulation that the District Court in Mannheim, not an arbitration panel in Stockholm, had the exclusive jurisdiction to resolve all disputes pertaining to the license. (Sedl Decl. ¶ 20.) Thus, not only is the Mannheim District Court the tribunal where the litigation is venued, and has before it the motion to produce the Samsung-GmbH license, it is the only court, as Nokia has agreed, which has jurisdiction to make this decision.

## II.  Nokia is not entitled to a subpoena under Section 1782 in any event.

Because this Court lacks jurisdiction over GmbH, there is no need to analyze whether Nokia is entitled to a Section 1782 subpoena. It is clear, however, that Nokia is not so entitled.

A district court is not required to grant a Section 1782 discovery application simply because it has the authority to do so. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Rather, the court should examine a number of factors to determine whether to exercise its discretion. "First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."

11

*Id.* Second, the court may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.* Finally, the court may consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country," or is "unduly intrusive or burdensome." *Id.* at 265. All of these factors counsel in favor of this Court's rejection of Nokia's request:

- Nokia is not only a party to the Mannheim proceeding, it is the party that chose that venue by suing GmbH in Germany.

- The nature of the Mannheim proceeding is technical, and the decision whether to compel production of the confidential Samsung-GmbH license or any other license will be made under German rules of civil procedure, as reasonable and appropriate for that forum and proceeding.

- The German rules that govern procedure in the Mannheim court reflect a public policy not to force parties to undertake the expensive and time-consuming "all documents" discovery search so routinely observed in U.S. litigation. The overbroad discovery request Nokia has propounded to GmbH is exactly the kind of overly intrusive and burdensome request that German courts seek to avoid.

Critically, this Court's rejection of Nokia's request does not mean Nokia is unable to obtain the Samsung-GmbH license. Nokia's request is already pending in the German court, and if that court issues a favorable ruling, Nokia will have the document in time to make meaningful use of it on the merits. Nokia's decision to seek identical relief in the Western District of Michigan is a preemptive strike against the German court and its process, and the request makes no sense when the documents Nokia seeks are not even located in the United States.

The Seventh Circuit recently rejected a Section 1782 discovery request very similar to Nokia's in *Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004). There, an Australian corporation filed suit in Australia against a Delaware corporation and its Australian and U.K. subsidiaries. After the Australian court denied a discovery request, the plaintiff initiated a Section 1782 suit, demanding that the Delaware corporation "cause its subsidiaries to

retrieve documents in Australia and the United Kingdom, have them shipped to Wisconsin, and therefore provide them to [the plaintiff], which will cart them to Australia" for use in the litigation. *Id.* at 402-03. The district court granted the requested relief.

In an opinion authored by Judge Easterbrook, the Seventh Circuit emphatically reversed. Judge Easterbrook first criticized the plaintiff for using Section 1782 as a tool for procuring documents located outside the United States: "Section 1782 was not intended to enable litigants to obtain in Spain evidence located in Spain that could not be obtained through proceedings in Spain. Section 1782 should not be used to interfere with the regular court processes in another country." *Id.* at 404, quoting Hans Smit, *American Assistance to Litigation in Foreign & Int'l Tribunals*, 25 Syracuse J. Int'l L. & Commerce 1, 11 (1998);[5] *accord Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079 (9th Cir. 2002) (affirming district court's denial of Section 1782 request for documents held in China, the district court having concluded that Section 1782 does not encompass the discovery of materials located in foreign countries); *Norex*, 384 F. Supp.2d at 55 (request for the production of documents held abroad by a foreign parent company was not "within the realm of discovery contemplated by § 1782").

Judge Easterbrook then commented at length on the nonsensical nature of the Section 1782 request, holding that it would be an abuse of discretion for the district court to grant it:

> Section 1782 gives district judges a source of authority, but use of that power depends on a good reason. Justice Muir [in Australia] already has analyzed [the plaintiff]'s need for the documents and held it has none—at least not yet. If, as Justice Muir concluded, Kestrel does not need those documents to make out its claim, then no purpose would be served by their production in the United States under § 1782. . . . <u>Only if it turns out that the documents are relevant to the Australian suit, and difficult or impossible to obtain through that court's processes, would it make sense to launch an ancillary proceeding in the United States</u>. Although air transportation, the Internet, and even fax machines have

---

[5] Professor Smit prepared the final version of Section 1782 as amended in 1964. *In re Sarrio S.A.*, 1995 WL 598988, at *2 (S.D.N.Y. Oct. 11, 1995) (citing Professor Smit's declaration and holding that "Section 1782 was not intended to provide discovery of evidence maintained with a foreign jurisdiction").

13

> shrunk the globe, <u>it remains best to conduct an Australian suit in Brisbane rather than in Milwaukee, which is 8,915 miles away.</u>. Until Justice Muir encounters a problem that proves difficult to handle under Australian rules (and the geographical reach of the Queensland court's process), the dispute should remain a subject for adjudication in Brisbane. Proceedings in Milwaukee are premature, and we hope that they are avoidable in the long run.

362 F.3d at 406 (emphasis added).[6]

The case for staying the Court's hand is even stronger here, where the German court has not yet ruled on Nokia's pending document request. Proceedings in Grand Rapids are premature, and they may be rendered wholly unnecessary by the Mannheim proceedings. Moreover, the documents Nokia seeks are not even located in the United States. *See Four Pillars*, 308 F.3d at 1079; *Norex*, 384 F. Supp. 2d at 55; *In re Sarrio S.A.*, 1995 WL 598988, at *2 (S.D.N.Y. Oct. 11, 1995) ("if Section 1782 could be used to obtain discovery evidence located in a foreign country it would become an instrument for interfering with the regular court procedures of the foreign country"). The discovery Nokia seeks in this matter would be an affront to the principle of judicial comity and would undermine important legal interests in Germany. For all of these reasons, this Court should quash the subpoena.

## Conclusion

Nokia's request for this Court's assistance in obtaining GmbH documents located in Germany that Nokia seeks to use in pending German litigation is unnecessary and inappropriate. This Court lacks jurisdiction over GmbH, Nokia has a similar discovery request still pending in the German litigation, and German discovery policies are at odds with the overbroad and burdensome discovery Nokia now seeks in the United States. GmbH respectfully requests that this Court dismiss Nokia Section 1782 action for lack of personal jurisdiction. Alternatively, this

---

[6] Judge Easterbrook also held that Section 1782 does not permit a court to disregard corporate formalities, a holding that reemphasizes the jurisdictional reasons why this Court should quash Nokia's subpoena. 362 F.3d at 404-05.

Court should decline Nokia's request because a Section 1782 proceeding is woefully premature and unnecessary.

Dated: May 21, 2007                Respectfully submitted,

By: _____/s/ John J. Bursch_____
William R. Jansen
John J. Bursch
Dean F. Pacific
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503-2487
(616) 752-2000
Attorneys for Robert Bosch GmbH